IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

JOSEPH OPPIE,                     §
                                  §
         Plaintiff,               §
                                  §
VS.                               §   NO. 4:05-CV-608-A
                                  §
CITY OF DALWORTHINGTON            §
GARDENS, TEXAS, ET AL.,           §
                                  §
         Defendants.              §

MEMORANDUM OPINION
and
ORDER

     Came on for consideration the motion of defendants, City of

Dalworthington Gardens, Texas ("City"), Sgt. Mike Taylor, Officer

J. Woolsey, Cpl. G. Petty, Officer G. Wilker, Sgt. D. Seward,

Officer C. Driskell, Officer B. Wright, Cpl. Ryan Miller, and

Capt. J. S. Vennum ("Vennum"), for summary judgment.  After

considering the motion, the response of plaintiff, Joseph Oppie,

("Oppie") the applicable authorities, and the undisputed summary

judgment evidence, the court concludes that the motion should be

granted.

I.

Plaintiff's Complaint

     In his second amended complaint, Oppie asserts claims

against defendants under both 42 U.S.C. § 1983 and unspecified

provisions of Texas law.[1]  Oppie complains he was deprived of his

---

     [1]The complaint never states whether the officer defendants are
sued in their official capacities, personal capacities, or both.  A §
1983 suit against a government officer in his official capacity is a
suit collectable from the governmental entity itself; a suit against
an officer in his personal capacity is a suit collectable directly

(continued...)

constitutionally protected rights (a) to privacy, (b) "to be free from the infliction by duly constituted peace officers of unreasonable and unnecessary force and violence," 2d Am. Compl. at 9, (c) "to be free from arrest under the authority of a warrant issued without any probable cause that plaintiff committed any offense," id., and (3) to bear arms.  With respect to his state law claims, Oppie claims that his rights under Texas law were violated because the warrant lacked probable cause, and "the authorization to search for and seize all 'firearms' was invalid on its face as violating the Texas Code of Criminal Procedure."  Id.

The alleged circumstances plaintiff says led to his alleged damages are as follows:  On September 12, 2004, two of the officer defendants were informed that Oppie's son, Clint Oppie, ("Clint") had allegedly threatened to kill a City police officer. Several of the officer defendants then investigated the matter. Next, Vennum obtained from a City magistrate a search and arrest warrant, which plaintiff claims lacked probable cause to the extent it was a warrant for this arrest.  The warrant authorized entry into Oppie's house, where Clint lived.  Vennum then assembled the remaining officer defendants into a tactical team to execute the warrant.  During execution of the warrant on

---

[1](...continued)
from the officer.  See Hafer v. Melo, 502 U.S. 21, 25 (1991).  While Oppie alleges that the officers are not entitled to immunity, he paradoxically makes no demand for monetary damages directly from the officer defendants.  Given this ambiguity, the court shall err on the side of caution and conclude that the officer defendants are sued in both their official and individual capacities.

September 15, 2004, defendants deprived Oppie of his rights because his firearms were confiscated and he was handcuffed on the floor of his house for twenty minutes.  Further, all of Oppie's injuries were the direct result of the City's policies, and under the City's organizational structure, Vennum is the specific policymaker responsible for his injuries.[2]

Oppie claims that he is entitled to recover actual damages, punitive damages, and his attorneys fees.[3]

II.

Grounds Raised in Defendants' Motion

Defendants have moved for summary judgment on all claims asserted by Oppie.  Specifically, defendants urge that:

1.   First, there was no invasion of Oppie's privacy because the warrant was valid.

2.   Second, Oppie's excessive force claim fails because there is no evidence that the force used was unreasonable.

3.   Third, Oppie's claim that defendants violated his right to be free from arrest under authority of a warrant issued without probable cause that Oppie committed any offense fails because he was not arrested.

4.   Fourth, because the warrant was valid, defendants had

---

[2] Oppie's pleading with respect to an applicable municipal policy is murky, to say the least.  Specifically, he alleges that his injuries were caused by the following: (i) a City policy endorsing the use of certain probable cause affidavits; (ii) the City policy favoring the use of tactical teams to serve certain warrants; and (iii) a policy favoring the use of warrants authorizing both arrest and search.

[3] Municipalities are immune from punitive damages under § 1983. City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981).

3

authority to seize Oppie's firearm, and, thus, his Second
Amendment claim fails.

5.    Fifth, Oppie has no evidence supporting his claim that
his injuries are the result of a policy or custom adopted by the
City.

6.    Sixth, the summary judgment record establishes the
officer defendants' affirmative defenses of immunity, thereby
requiring that defendants have summary judgment granted in their
favor for all claims asserted against them in their individual
capacities under both federal and state law.

III.

Summary Judgement Principles

A party is entitled to summary judgment on all or any part
of a claim as to which there is no genuine issue of material fact
and as to which the moving party is entitled to judgment as a
matter of law.  Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby,
Inc., 477 U.S. 242, 247 (1986).  The moving party has the initial
burden of showing that there is no genuine issue of material
fact.  Anderson, 477 U.S. at 256.  The movant may discharge this
burden by pointing out the absence of evidence to support one or
more essential elements of the non-moving party's claim "since a
complete failure of proof concerning an essential element of the
nonmoving party's case necessarily renders all other facts
immaterial."  Celotex Corp. v. Catrett, 477 U.S. 317, 323-25
(1986).  Once the moving party has carried its burden under Rule
56(c), the non-moving party must do more than merely show that
there is some metaphysical doubt as to the material facts.

4

Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  The party opposing the motion may not rest on mere allegations or denials of pleading, but must set forth specific facts showing a genuine issue for trial.  Anderson, 477 U.S. at 248, 256.  To meet this burden, the nonmovant must "identify specific evidence in the record and articulate the 'precise manner' in which that evidence support[s] [its] claim[s]."  Forsyth v. Barr, 19 F.3d 1527, 1537 (5th Cir. 1994). An issue is material only if its resolution could affect the outcome of the action.  Anderson, 477 U.S. at 248.  Unsupported allegations, conclusory in nature, are insufficient to defeat a proper motion for summary judgment.  Simmons v. Lyons, 746 F.2d 265, 269 (5th Cir. 1984).

IV.

## Undisputed Summary Judgment Evidence

The following is an overview of the evidence pertinent to the motion for summary judgment that is undisputed in the summary judgment record:

A.   Investigation of Threats Made by Clint.

Clint received a speeding ticket in the Town of Pantego, Texas, ("Pantego") on August 29, 2004, from Pantego police officer Barry Reeves ("Reeves").  On September 12, 2004, Rhonda Michelle Cottrell ("Cottrell") informed Pantego police that Clint had, in her presence, threatened to kill Reeves because of the traffic citation.  Cottrell then made a voluntary statement to the City's Department of Public Safety prefaced by her averment

5

that she had known Clint for at least three years, and that his moods over the prior six months had been "very unstable."  Defs.' App. at 8.  As for the her specific allegations, Cottrell swore that on September 7, 2004, Clint had picked her up from her place of employment, The Wild Hair Salon, to take her to lunch.  In his car, Cottrell noticed a black case in the front passenger seat, which Clint claimed contained a firearm.  Later, after the two had finished their lunch and were standing in line to pay the bill, Cottrell was approached by two female friends of hers who were both employed as court personnel by Pantego.  When Clint learned of their employment he stated that "they could die today too."  Id. at 7.  Clint then implied to Cottrell he intended to kill Barry Reeves on account of the citation.  The very next day Clint returned to see Cottrell at The Wild Hair Salon and made further violent statements about "taking out" the entire City. Id. at 8.

Proceeding with their investigation, City police next confirmed that plaintiff's son had received a citation from Reeves.  They also confirmed that Clint was licensed by the State of Texas to carry a concealed handgun.  From further investigation, it was determined that Clint resided at Oppie's residence ("residence").

B.   <u>Magistrate Issues a Search and Arrest Warrant</u>.

During the early evening of September 15, 2004, Vennum prepared an affidavit in support of a search and arrest warrant. The affidavit listed the residence as the place to be entered. On the basis of Cottrell's statement and the subsequent investigation, Vennum also swore that he had good reason to believe that Clint had committed either obstruction or retaliation in violation of Texas Penal Code § 36.06.  Vennum concluded in his affidavit that there was probable cause to believe Cottrell's statement that Clint intended to kill Reeves.

After reviewing the affidavit, City Municipal Judge Suzanne Huson issued a "no-knock" arrest warrant for Clint to be executed at the residence.[4]  The warrant authorized City police to search the residence for any firearms, and to search Oppie himself.  The executing officers were specifically commanded by the warrant "to arrest and search each suspected party named and described in the affidavit."  Defs.' App. at 12.  The portion of the affidavit pertinent here reads as follows:

> 2. Said suspected place is in the charge of and controlled by each of the following named and/or described parties (hereinafter called "suspected party," whether one or more), to wit: Joseph Oppie, the owner of the property and Clint Alan Oppie, the suspected party, also resides at the location.

Defs.' App. at 13.

---

[4] The "no-knock" warrant was granted because defendants "established probable cause to believe that to knock and announce their purpose by the officers executing this warrant would be futile, dangerous, and otherwise inhibit the effective investigation of the offense."  Defs.' App. At 12.

7

C.    Execution of the Warrant.

The warrant was executed at approximately 11:00 p.m. on September 15, 2004.  The executing officers entered through the locked front door of the residence by breaking the door.  The officers handcuffed Oppie, and he laid on the ground for twenty to twenty-five minutes, after which he was instructed to go to the residence's den and wait.  During this time the entire house was searched.  After about ten minutes in the den, Oppie's handcuffs were removed, and the officers left the residence.  Oppie was not taken into custody, nor charged with any crime.  The executing officers did temporarily confiscate a firearm Oppie owned, but it was returned to him shortly thereafter.

V.

Analysis

A.    Claims Under 42 U.S.C. § 1983.

1.    No Evidence of Fourth Amendment Violation.

Oppie has produced no evidence that his arrest violated his Fourth Amendment rights.[5]  His claim is premised on the theory that the warrant was invalid since it commanded Oppie's arrest without the requisite showing of probable cause.  First of all, as defendants point out in their motion, an argument can be made that the warrant did not call for Oppie's arrest.  See United States v. Ventresca, 380 U.S. 102, 108-09 (1965); Br. in Supp. at

---

[5] Oppie's claim that the warrant violated his "right to be free from arrest under the authority of a warrant issued without any probable cause" is being interpreted by the court as a claim that the warrant violated the Fourth Amendment.

8

21.  However, assuming that the warrant actually commanded Oppie be arrested, his claim is superfluous because a search warrant founded on probable cause implicitly carries with it the limited authority to detain occupants of the premises while a proper search is conducted.  Michigan v. Summers, 452 U.S. 692, 705 (1981); Mendenhall v. Riser, 213 F.3d 226, 239 (5th Cir. 2000) ("Probable cause for a search warrant does not require probable cause to arrest the person whose property is to be searched."). Oppie's complaint that the warrant required a showing of probable cause to arrest him is incorrect.  His mere presence in the residence while the valid search warrant was executed subjected him to temporary arrest.  The Fourth Amendment would have allowed the same actions even had his name been omitted from the warrant. Therefore, the dispositive issue is not whether Oppie's arrest was commanded by the warrant but whether there was probable cause to search his residence.  The summary judgment record clearly reflects, and Oppie apparently does not contest, that there was probable cause to search his residence.  See Illinois v. Gates, 462 U.S. 213, 231 (1983); see also Franks v. Delaware, 438 U.S. 154, 155-56 (1978).  Accordingly, Oppie's over-arching contention that he was subjected to temporary seizure without probable cause fails.

     Next, the court finds no evidence to support Oppie's claims that he was subjected to excessive force.  Excessive force is proved by "(1) an injury, which (2) resulted directly and only from the use of force that was clearly excessive to the need; and

the excessiveness of which was (3) objectively unreasonable."
Ikerd v. Blair, 101 F.3d 430, 433-34 (5th Cir. 1996).  An
individual's detention in handcuffs during the search of a
particular residence is permissible where, inter alia, the use of
handcuffs minimized the inherent risk in searching the house for
dangerous weapons.  Muehler v. Mena, 544 U.S. 93, 102 (2005).
There is no evidence that Oppie's twenty-five-minute detainment--
or the use of handcuffs to effectuate that detainment--was in any
way excessively forceful or objectively unreasonable, or that it
lasted any longer than was required to complete the mission.

     Finally, Oppie's right to privacy was not violated.  The
Fourth Amendment protects an individual's reasonable expectation
of privacy, and prevents government officers from acting
arbitrarily.  See Katz v. United States, 389 U.S. 347, 351-52
(1967); see also Wolf v. Colorado, 338 U.S. 25, 27-28 (1949).[6]
Given the fact that the warrant was supported by probable cause,
the intrusion was in no way arbitrary.

     For the reasons stated, the court is granting defendants'
motion for summary judgment with respect to all of Oppie's claims
made under the Fourth Amendment.

---

     [6] The concept, however, is generally limited to evaluating the
admissibility of evidence seized without a warrant, most commonly
where there has been warrantless eavesdropping on private
conversations.  See, e.g., Kee v. City of Rowlett, 247 F.3d 206, 211-
15 (5th Cir. 2001).

2.   <u>No Evidence of Second Amendment Violation</u>.

Defendants urge in their motion that their temporary seizure of Oppie's firearm was justified by the exigencies of the situation, and, furthermore, that the seizure is insulated from attack because the officer defendants were acting under the authority of a valid warrant.  While the court may agree with that contention in a general sense, upon a review of the applicable authorities the court is satisfied that Oppie's Second Amendment claim fails as a matter of law.

The Fifth Circuit has said that the Second Amendment protects the rights of individuals to privately possess their own firearms.  <u>United States v. Emerson</u>, 270 F.3d 203, 261 (5th Cir. 2001).  However, the Second Amendment right to "bear arms" has never been incorporated via the Fourteenth Amendment to apply to the States.  <u>See</u> Ronald D. Rotunda et al., Treatise on Constitutional Law: Substance and Procedure § 14.2 (3rd 1999).  Nor, for that matter, has the infringement by state governmental officers of rights guaranteed to an individual by the Second Amendment ever been determined to give rise to a private right of action for damages under § 1983.  <u>See</u> <u>White v. Town of Chapel Hill</u>, 899 F. Supp. 1428, 1433 (M.D.N.C. 1995).  Simply put, the Second Amendment does not apply to acts taken by the States, and, thus, Oppie has not established a prima facie case under § 1983 with respect to his Second Amendment claim.  <u>See</u> <u>Parratt v. Taylor</u>, 451 U.S. 527, 535-36 (1981).  Accordingly, the court is granting defendants'

motion for summary judgment with respect to Oppie's Second Amendment claim.

    3.   <u>Officer Defendants' Immunity and City Liability</u>.

The court's conclusion that Oppie's § 1983 claims lack the substantive merits obviates the need to inquire into the issue of qualified immunity. <u>Saucier v. Katz</u>, 533 U.S. 194, 181 (2001). Likewise, the court need not determine whether Oppie was actually injured as a result of the alleged City policies. <u>Monell v. Dep't of Soc. Serv.</u>, 436 U.S. 658, 691 (1978).[7]

B.  <u>Claims Under Texas Law</u>.

All of Oppie's state law causes of action fail. Texas law does not recognize common law causes of action for damages to enforce state constitutional rights. <u>City of Beaumont v. Bouillon</u>, 896 S.W.2d 143, 148-49 (Tex. 1995). Given the fact that plaintiff seeks only monetary damages and recovery of attorneys fees, Oppie fails to allege a claim under the Texas Constitution.[8]

---

[7] If the court were to address the issue, however, it would conclude that Oppie's allegation that Vennum is the applicable policymaker is not supported by the summary judgment record. <u>See Jett v. Dallas Ind. Sch. Dist.</u>, 491 U.S. 701, 739 (1998).

[8] Oppie has not offered any illumination as to the actual source for claim that the seizure of his firearms was invalid under the Texas Code of Criminal Procedure, nor even briefed the issue in his response. Apparently, he has abandoned that claim.

VI.

<u>O R D E R</u>

For the reasons stated herein,

The court ORDERS all claims and causes of action asserted by plaintiff in the above-captioned action against defendants be, and are hereby, dismissed.

SIGNED August 1, 2006.


_____/s/ John McBryde_____
JOHN McBRYDE
United States District Judge